The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case 4-2-1-0-5-3-6. Janet Campbell v. Grace B. Is it Howe or Whoe? We believe it's Howe. Howe, thank you. At all. Would counsel for appellant please state your name for the record. William Farr, Your Honor. Thank you. And for the appellee. I'm Gallery Quinn on behalf of the Department of Human Services, Your Honor. Thank you. Mr. Cox, will you be arguing? I will not, Your Honor. Thank you. I think we have a note of that. You may proceed. Thank you, Your Honor. As I indicated, my name is William Farr and I'm the attorney for the plaintiff appellant, Janet Campbell. This case appears before this court on an appeal as of right from the trial court's order entered on August 23rd, 2021, wherein the judge in Sangamon County granted the defendant's motion to dismiss based upon a lack of standing. A timely notice of appeal was filed on September 21st, 2021. The sole and very limited issue is whether the plaintiff had standing to file her complaint under the administrative review law. By way of background, and I know that the court. Excuse me, may I interrupt, please. In terms of background, we have read the briefs and are familiar with the record. So I'd like to ask a couple of specific questions at this point, please. Yes, Your Honor. First, do you agree the plaintiff, Janet, here did not apply for public aid benefits, is that correct? Yes, Your Honor. And the plaintiff was not a recipient of public aid benefits, is that correct? That's correct, Your Honor. And plaintiff did not open an estate and have herself appointed a special administrator for purposes of appealing the department's decision? No, she did not, Your Honor. OK, so doesn't the administrative review law require that a person seeking administrative review of an agency decision be a party of record? Yes, it does, Your Honor. I totally agree. But my argument is more towards why that is fundamentally unfair in this particular case. Well, with regard to that issue and unfairness, I believe you state in your brief that standing is an overarching legal principle which is not limited by statutes. What authority do you have to give us for that statement, counsel? I go all the way back to what I learned in law school, Your Honor. And standing obviously is necessary for people to get before the court and for the court, as counsel mentions in her brief, to call out cases or parties that aren't necessary. But in this particular situation, we're asking the court to interpret standing based upon the great financial injury to Janet Campbell if standing is not granted to her for that. So as to look at any authority, I think it's a basic fundamental legal principle. And we're asking the court to interpret that legal principle. Now here, don't we have two statutes that specifically contain standing requirements, the public aid code and the administrative review law? Yes, Your Honor. Well, how does she meet those requirements, counsel? My opinion is she does not, Your Honor, but that's what we're asking the court is to reconsider the application of standing to this case because of the fundamental unfairness of the situation. And for your authority for that position, you cite and use Abraham Lincoln's quote, again, a law may be both constitutional and expedient, and yet may be administered in an unjust and unfair way. Is that the authority you'd ask us to use? Yes, Your Honor. And how does that authority, that quote, counsel, have the force of law? It does not, Your Honor. I think part of, and I will deal with that later, part of that is the court, there are three branches of government, the legislative, executive, and judicial. The judicial always has the authority to supervise the actions of the legislative and the executive. In this situation, the legislation or the two statutory or statutory sites, the code provisions that Your Honor has referenced, the executive has enforced those, and we're asking this court to interpret those differently than what they are listed. I mean, I don't have any authority to come before the court and say you must do this. We're asking the court to interpret standing to allow my client at least to present her side of the situation further in the circuit court. So I don't. I'm sorry, I just have one other question. And I don't mean to monopolize the questioning here, but how can we, you say you're asking that we interpret a statute, but aren't you asking us to void a statute and statutory requirements, counsel? Yes, Your Honor. And in this particular instance, so and I want to make that point very adamantly that we're not asking the court to void the statutes as, as everyone that perhaps would be similar to Ms. Campbell. We're asking the court to interpret the statute to not apply to Ms. Campbell in this situation, based upon the injury to her financially. Counsel, what's the fundamental unfairness to which you speak? Your Honor, if I may, I believe it's about $635,000 that the department is going to seek from Ms. Campbell for what happened, she had received a check for the sale of non-marital and I think that was acknowledged by the department. She received a check for over $400,000, took that, put that in a joint account and there is no argument that she put that in the joint account. But when she put it in the joint account, she didn't have the intent to have that become marital property or to give her husband Bernie Campbell any interest. How long was it in the joint account before it was taken out? That was overnight, Your Honor, less than, I believe less than 12 hours. Is the department aware of that? Yes, Your Honor, I believe they were. At the time that the money was put into the account, was the decedent, did the decedent have a power of attorney? He did, Your Honor, that was his natural son, not related to Ms. Campbell other than by her marriage. Doesn't a power of attorney terminate upon the principal's death? It does, the property one does, Your Honor. So how did this power of attorney give, I think her name was Aide, the authority to represent the decedent in the appeal? If the power of attorney is terminated, the power of attorney himself wouldn't have that authority, so how could he delegate Aide the authority to be the representative of the decedent? I don't understand that. He did that before the decedent passed away. That's not valid, is it? I'm sorry, I see the, yes, that's correct, it would not be at his death. So who represented the decedent, someone without authority? Yes, Your Honor. Is that a problem? It seems like to me it should be. Definitely, Your Honor, I agree. Okay, well, if it's a problem, what's the remedy? Because Justice Zinoff has asked some very specific questions about what this court can do, and you're saying the only thing we can do is void the statute. That doesn't seem like something that this court would be in a position to do in my perspective, but I'd like to hear what you think about that. Perhaps void was too strong a word, Your Honor, maybe interpret that statutory provision would have been better. I think that the court does have the authority to do that. There's obviously no doubt about that, but it's not, I can't come to you, I mean, Abraham Lincoln has been cited and discussed. There is no authority for what I'm bringing to the court, but there are occasionally, I've argued one or two issues of first impression with any court, whether in the circuit court or in an appellate court. So it's not anything that I can present to you that's going to support my position for there not to be perhaps an alternative to give my client what she's asking. I'm curious when the department made the determination, there would be a spin down, I think is what you call it, and a penalty. To whom did they send that notice? Because I can't tell from the briefs, the briefs just said they sent a notice. Okay, who'd they send it to? Well, my client received that notice as a party. She was acknowledged as a party in the hearing before the Illinois Department of Human Services. So she received a copy of that notice. I received a copy from Ms. Adie, not personally, but via the mail or email. Let me ask a less specific question. Are there any areas of the law where standing is relaxed in the sense that is treated as a screening device to prevent people that don't have a real interest, and you're talking about dollars and cents, that's the interest, to permit them to argue before the court or to participate in the decision making process? Can you think of any area of the law where that occurs? No, to be perfectly honest with the court, I cannot. But I think, as I've said before, the court has the authority to interpret, review the executive and legislative decisions and interpret those decisions to specific cases or on a specific case basis. And that's what we're asking this court to do in this particular case. Well, one of the strongest rules of statutory construction is that if you're going to be interpreting something, there better be something to interpret. There ought to be some ambiguity. I see absolutely no ambiguity in these statutes. Well, I understand that, Your Honor. And to be perfectly frank with you, I don't disagree. But the standing is to get, my opinion is, we're asking that be interpreted to not be applicable in this particular case because of the monetary damage to the plaintiff, Janet Campbell. Mr. Farr, the plaintiff did have a remedy here that she didn't pursue. Isn't that correct? I mean, she could have opened an estate for the purpose of appealing the department's decision, but yet she didn't do it. That's correct, Your Honor. Right? Yes. And we believe, Your Honor, that since she was allowed to have the authority to participate in the hearing, the hearings, the variety of times that they were scheduled, and then ultimately in the appellate argument, excuse me, not the appellate, but in the appeal through the department, she was allowed to argue. So she was given, if you will, standing to participate in that particular level of this case, Your Honor. What level is that, counsel? Well, that would be the appellate level with the Illinois Department, not the judicial review, the level just prior to the judicial review following the administrative process. When was the $400,000, plus $400,000 put into this account? Short, like I said, Your Honor, about 12 hours after. No, I mean, in relation to whether Deceden was in the nursing home at that time. That's what I'm trying to get at. Like, what year, what month, if you know? Well, it would have been before he died, about three years, Your Honor. So I would think 2018, I believe. 2018, and he entered the nursing home in March of 2017. Is that right? Yes, Your Honor. Thank you, Your Honor. No questions, counsel. I was gonna, I have one other question. Yes. So this transfer of the assets occurred within five years of Bernie's application for benefits, correct? Yes, yes, Your Honor. And that's what's prohibited by statute, correct? Yes, Your Honor. Yes. Well, I agree it's prohibited. Does the department take into consideration that money was only in this joint account for, it sounds like, 24 hours or less? Or does that make any difference whatsoever? Your Honor, based upon the way the cases has flowed through, I would say the department, even if they considered it, didn't care that it was such a short period of time in the account. Would you say that again? I didn't hear that. Hold on, I'm gonna try to turn my audio up a little. Okay, please go ahead now. Thank you. I don't speak loud enough either. I apologize. Your Honor, I believe that the department, even if they considered the short period of time, they either ignored it or didn't care, and obviously proceeded on to enter the spend down penalty. Okay, and the spend down in penalty, it's just not $395,000, it's $385,000. The $385,000 is added to the $310,000, so the total is $695,000, am I right? Yes, Your Honor. Okay. As relates to standing, there are elements to that. One is there has to be a legally causable interest that is distinct and palpable. Also, it has to be fairly traceable to the defendant's actions and substantially likely to be prevented or redressed by the grant of request of relief. Now, as I've said before, obviously there's no injury more distinct and palpable than the loss of $695,000 plus, and that is a legally cognizant interest. I think the traceability, the department entered that penalty and the spend down, so it was the department's actions that led to that calculation. And if the spend down and the penalty are vacated or abandoned, that will obviously substantially prevent or redress any harm if Ms. Campbell is allowed to recover that money. I've spoken about the three branches of government. I've spoken about standing being a tool and not a principle. I've also spoken about Abraham Lincoln and what we believe in accordance with what Lincoln's quote says, that the application of this law to this particular person is unjust and unfair, and standing has to take precedence over the department's rules and in this situation, actually the code and the law. We're asking that this court reverse the trial court's granting of the motion to dismiss and remand to the circuit court for further proceedings. Thank you, Your Honors. Thank you, counsel. We'll hear from you on rebuttal. Ms. Quinn. Thank you, Your Honor. First, to Justice Connick's point, the proceedings before the administrative law judge in these cases are fairly relaxed, and so anyone can come in and be heard at that point, whether they're a party or not. Mrs. Campbell was not a party to these proceedings. That's why she actually had to ask Missy Ade, her husband's representative, to file the appeal for her. But she was there and was heard, whatever she had to say. Mr. Farr noted in his circuit court brief that she provided something like 770 pages of documentation on this issue to the department. We do not have the full record, of course, because this case went out. It was dismissed for lack of standing before the administrative record could be filed, so we can't really speak much to the merits. We've kind of filled in the gaps here. But as the court understands, when a person goes on public aid for long term residential care, there is a look back period during which the department is required to examine whether any of the recipients property was transferred for less than fair market value. Counsel, excuse me. Following up on Justice Turner's question, does it matter? Well, first, is it your understanding that the money was only in the account for 12 hours or so? I have not seen the full administrative record, so I don't know that. What I do know is that Janet had the opportunity to provide something like 770 pages of documentation, and the ALJ at the department hearing level held the record open for over six months so that Janet and excuse me for calling her by her first name. It's for clarity's sake, Your Honor. She was given the opportunity to provide any further documentation that she wished, and the ALJ says nothing was received, so she finally closed the record and issued her opinion. Go ahead, Justice. Well, she got Missy to file the appeal for her to sign off on the appeal, but we've already determined that her power of attorney had expired. So, on her behalf. Has that appeal been filed improperly. And should her position as an appellee be nullified? Missy Aide, that is. Or Missy Aide. Yeah, that hadn't occurred to me until the court raised it, Your Honor. I'm sorry about that. That makes some sense. However, Mrs. Campbell was never Bernie's power of attorney. She did have options, she could have opened an estate with herself as the administrator, that was one option. If I'm not mistaken, she still could do that, because in the in the Gattaca case, the first, which was discussed in Mr. Farr's agreed statement of facts, and which the department argued at the circuit court level, the Illinois appellate court suggested that that was a way to pursue payment for benefits. The other thing, the other avenue of relief that Janet would have is that according to the department's regulations. She is the community spouse, not the institutionalized spouse, and a community spouse has the option of contesting the department's attribution of resources. This particular provision is 89 Illinois Administrative Code 120-379-F. And to my knowledge, she hasn't done that yet, and there isn't a time limit on it, so she could still do that if she believes that the attribution of resources is unfair to her. What she couldn't do is bring an appeal from the administrative proceedings as a party, because she was neither a party, nor an applicant, nor a recipient. Sorry, I have a cold. Based on the status of this case, and the facts as we know them, as you've indicated, we don't have the full administrative record. Is this a case where the department is effectively saying, this was money that was available to the recipient of aid, and then at some point, that money was transferred or given to Ms. Campbell, and that the presumption is, or the worry the department has is, that money was transferred and given over to another person, so that the decedent would be eligible for public aid, and would not have to pay all or part of what it costs to be in a nursing home. So the underlying purpose of this is for the department to say, you can't do that. You've got to use your resources first before getting rid of your assets, which is apparently a form of estate planning, but this five-year period is such that it gives the department the power to say, no, no, you can't do that. We're going to get that money back. That's what this is all about. At bottom, Your Honor, that is what this is all about. Years ago, the look-back period was six months. It got enlarged by law to five years. We understand that that can be difficult for people. Not suggesting that either of these people did anything wrong, but as the court noted, people have been known to try to transfer assets to their loved ones, and it's human and it's understandable, but when a person seeks to have taxpayer money fund their long-term residential medical care, it is not unfair to ask them to shoulder some of the burden, which ensures that money will be available in the future for other people. Counsel, I fully agree with that and appreciate that, but that's not really what happened here, is it? If I'm to believe that she inherited, I think, farm ground, Janet, from an ex-husband, sold it, put the funds in a joint account overnight or a very short period of time, and then, frankly, just took it back out and claimed it herself because it was hers, that, to me, does not look like something or a situation where someone has tried to hide assets to keep from having to pay for their nursing home bills. Does the department consider that? I mean, it doesn't appear that they did here or it did here. From this record, Your Honor, it appears that the department considered something because Janet herself alleged that she provided 770 pages of documentation to support what she said, and yet the department imposed the spend-down and the penalty. Well, let me stop you there. The secretary in the final determination says that Missy Aide provided no evidence at all or any testimony contravening the penalty and, in fact, didn't even disagree with it. So that's what really concerns me here, is Missy Aide really doesn't have authority to even be there, as far as I can tell, legally, and she does nothing, and she's working for the nursing home to protect the decedent's assets. So it sounds like, to me, your argument on standing is pretty solid, but from an equity standpoint, I guess my question is, does it matter to the department? And I will also stop myself and say, well, I'll also say that, in all candor, you've been very straightforward in your responses, and you've actually, I think, provided some potential advice to, not advice, but a potential remedy that maybe she has different than what she's pursuing here. So I do appreciate that very much. And I also want to add or question, in a practical sense, forgetting about the joint account, which was very brief, this wasn't Bernie's money. Is that correct? I honestly don't know, Your Honor. From this record, I honestly don't know. I know that's what the department determined, and I accept that. I understand that Janet, according to Mr. Farr, in his circuit court brief, Janet provided hundreds of pages of documentation to support what she was saying. So even though Ms. Yade didn't do much to further Janet's claims, it appears that Janet had the opportunity because those proceedings were informal and because she was allowed. I'm assuming, too, that Bernie applied in, I think it was, went in and applied in 2017 and the application wasn't approved until 2020. So I assume that during those, what, two and a half years, there was a lot of wrangling with this very situation. And again, because we don't have that record in front of us, I don't know the specifics of it, and it goes to the merits and not whether Janet had standing. I don't know that I can provide more than that, Your Honor. So in one sense, and I understand, and we've all agreed, including Mr. Farr, that the statutes seemingly require this result. Is there a way to view this as the dismissal because of standing was premature? Or that we can't be fully cognizant, fully aware of what the department considered and didn't consider since we don't have the record? Dismissal on the basis of standing wasn't premature, Your Honor, because Janet didn't, she did not have standing. There were avenues of relief she could have pursued, and she didn't. There just doesn't seem to be any way that she had standing to bring this circuit court case and subsequently this appeal. There are other avenues she could pursue. And that's all. You would agree at the same time that this was poorly supervised as a legal proceeding in the sense that we've got somebody participating in Missy 8 that had no business participating. That in turn resulted in the state, or as the representative of the state, doing nothing, saying nothing, and not making sure that the record was complete or that it was available. And it seems like she would have had that duty. Yes, she was. It was her. It was her duty. Well, it was her duty to represent Bernie. Bernie's interest, whatever that was her duty to represent Bernie's interest. She wasn't representing Janet's at that point. Understood. Understood. And I agree, it seems harsh, but that is, that is what exact what exacerbates that is now the nursing home turns to Janet. Yes, Your Honor. Where to represent of the nursing home presented no. Oh, I'll call it defense for the decedents assets or decedents estate, but as Justice Zinoff has pointed out and you actually stated as well. They could have opened an estate and they did. So, all right. Miss Quinn, do you have further argument. I do not, Your Honor. All right. Mr. And thank you for your candor. And I'm going to even before we begin with Mr far. I'm going to thank him for his candor and being very straightforward and telling us he's asking us to do something that Well, I'd say would be unusual. But you may proceed, Mr for Your Honor, I believe I have nothing. I think the courts questions drew everything I had that is relevant and important to the case. So I would yield my time back. Well, you both get points for not beating a dead horse. And, you know, you've each made your points as clearly as possible. And we'll take this matter under advisement.